PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | CASE NO. 5:17-CR-00334 |
| Plaintiff-Respondent, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| TREY W. MOORE, | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| Defendant-Petitioner, | ) | **AND ORDER** |
| | ) | [Resolving ECF No. 32] |

The Court considers Defendant-Petitioner's Motion to Modify or Correct a Legal Sentence (ECF No. 32). The Motion is denied for the reasons herein.

## I. BACKGROUND

Petitioner Trey Moore was indicted in 2017 for violating 18 U.S.C. §§ 922(g)(1) and 924(a)(2)—felon in possession of a firearm. ECF No. 1. He pled guilty to one count and was sentenced to 22 months of federal incarceration and three years of supervised release. ECF No. 25. He later moved to vacate the judgment, to which the Government responded in opposition. ECF Nos. 32 and 33. Petitioner argues that § 922(g)(1) is unconstitutional—both facially and as applied to him—because a lifetime ban on a firearm possession violates the Second Amendment to the United States Constitution.[1] ECF No. 32. The case was reassigned to the Court on

---

[1] *Pro se* filings are "held to less stringent standards than formal pleadings drafted by a lawyer" and thus are "liberally construed." *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) and *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).

(5:17-CR-00334)

September 24, 2024. [Non-Docket Entry] dated 9/24/2024. Defendant was released from custody and began his period of supervised release on July 18, 2025. ECF No. 30.

## II. LEGAL STANDARD

Section 922(g)(1)'s restriction on gun ownership by convicted felons is constitutional. See *United States v. Vaughn*, 2023 WL 9789018 (6th Cir. Sept. 28, 2023); *United States v. Williams*, 113 F.4th 637 (6th Cir. 2024). In *District of Columbia v. Heller*, the Supreme Court held that the Constitution protects the right to keep and bear arms for law-abiding and responsible citizens. See 554 U.S. 570, 635 (2008). It clarified, however, that "nothing in [*Heller*] should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill[.]" *Id.* at 626 (cleaned up). Later—in *McDonald v. City of Chicago*—it reiterated that *Heller* "did not cast doubt on such longstanding regulatory measures as prohibitions on the possession of firearms by felons and the mentally ill[.]" 561 U.S. 742, 786 (2010). In reliance, the Sixth Circuit holds that the Second Amendment rights of felons can be comparatively limited by statute. See *United States v. Carey*, 602 F.3d 738, 741 (6th Cir. 2010) (citing *Heller*, 554 U.S. at 626).

In *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 70 (2022), the Supreme Court trimmed the constitutionality of many firearm regulations, yet reaffirmed "certain reasonable, well-defined restrictions" on the right to bear arms.[2] The Sixth Circuit has

---

[2] "[W]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. To justify its regulation, the government may not simply posit that the regulation promotes an important interest. Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command." *Bruen*, 597 U.S. at 17.

2

(5:17-CR-00334)

subsequently reasserted § 922(g)(1)'s constitutionality and the validity of its pre-*Bruen* precedent as applied to dangerous persons. See *Vaughn*, 2023 WL 9789018, at *1 ("we unambiguously held in [*Carey*] that felon-in-possession statutes do not violate the Second Amendment[""]); *In re Clark*, No. 23-1401, 2023 U.S App. LEXIS 30481 at *3 (6th Cir. Nov. 15, 2023) ("*Bruen* did not cast doubt on longstanding prohibitions on possession of firearms by felons.") (cleaned up). Both *Vaughn* and *Clark* illustrate the Sixth Circuit's commitment to *Carey* post-*Bruen*.

Last year, the Supreme Court reaffirmed the constitutionality of prohibitions on firearm possession by "felons and the mentally ill." *United States v. Rahimi*, 602 U.S. 680, 699 (2024) (citing *Heller*, 554 U.S. at 626, 627). In assessing a related statute (§ 992(g)(8)), it clarified that an "individual found by a court to pose a credible threat to the physical safety of another may be temporarily disarmed consistent with the Second Amendment." *Id.* Following *Rahimi*, the Sixth Circuit held § 922(g)(1) as facially constitutional after addressing whether: (a) precedent upholding § 922(g)(1)'s constitutionality was controlling; and (b) history and tradition affirmed the statute's validity. See *Williams*, 113 F.4th at 648. Because "our nation's history and tradition demonstrate that Congress may disarm individuals they believe are dangerous," the statue is "not susceptible to a facial challenge" when it does precisely that. *Id.* at 6577.

Even so, § 922(g)(1) may be susceptible to an as-applied challenge when a petitioner has a chance to demonstrate he is "not dangerous" and thus outside the statute's constitutionally permissible scope. *Id.* An as-applied analysis is "focus[ed] on each individual's specific characteristics" and thus "requires considering the individual's entire criminal record—not just the predicate offense for purposes of § 922(g)(1)."[3] *Id.* Certain past convictions are highly

---

[3] The Sixth Circuit left open whether "information beyond criminal convictions" is relevant to a dangerousness analysis. See *Williams*, 113 F.4th at 658 n.12.

3

(5:17-CR-00334)

probative of dangerousness, including: (1) crimes against the person;[4] (2) crimes which, "while not strictly crimes against the person, may nonetheless pose a significant threat of violence against a particular person";[5] and (3) crimes which cause no physical harm to another person or the community."[6]  *Id.* at 658–59.

### III. DISCUSSION

A determination of dangerousness analyzes the entirety of past offenses.  Petitioner was convicted of burglary in the Summit County Court of Common Pleas in 2007 (*Ohio v. Moore,* CR-2007-04-1132-A (Ohio Ct. Com. Pl. Summit Cnty. 2007)) and of violating § 922(g)(1) in 2017 (*United States v. Moore,* Case No. 5:17-CR-00334 (N.D. Ohio filed Aug. 22, 2017)). While a "categorical match" of criminality is not necessary, Petitioner's convictions fall in the second class of crimes because they posed "a significant threat of violence against a particular person." In 2017 alone,

> Officers observed a mostly smoked marijuana blunt in the defendant's hand and asked him to step out of the vehicle. The defendant refused to do so. Officers then opened the door, but the defendant pulled it back and attempted to shut it. A struggle ensued to get the door open, and during the struggle one of the officers observed a gun in the defendant's waistband. At that point, an officer tased the defendant, and the gun fell to the ground. Officers were then able to handcuff the defendant after gaining control of both of his arms and place him under arrest. The defendant kicked his feet

---

[4] Murder, rape, assault, and robbery and are "at least strong evidence that an individual is dangerous, if not totally dispositive on the question." *Id.* at 658
[5] The second category includes crimes that "put someone's safety at risk, and thus, justify a finding of danger," such as drug trafficking and burglary. *Id.*  at 659.
[6] The third category is the most challenging—examples include mail fraud or false statements—because "many of these crimes do [not] make a person dangerous." *Id.* Rather than searching categorical matches to indicate dangerousness, "district courts may make 'an informed judgment about how criminals commonly operate.'" *Id.* at 660 (quoting C. Kevin Marshall, *Why Can't Martha Stewart Have A Gun?*, 32 Harv. J.L. & Pub. Pol'y 695, 729).

4

(5:17-CR-00334)

>while officers attempted to get him to the ground, so he had to be placed in shackles.

ECF No. 33 at PageID ##: 153–54. Petitioner's conduct and convictions in 2007 and 2016 are sufficient evidence that he is a dangerous individual whose disarming is constitutionally compliant.[7] He has not met his burden of persuading the Court that he qualifies for exemption from § 922(g)(1)'s commands. His interpretation of *Bruen* is misplaced, as the Supreme Court therein repeatedly emphasized the right to bear arms for self-defense by *law abiding citizen*s, not dangerous ones. See *Bruen*, 597 U.S. at 2122, 2125, 2131, 2133, 2134, 2138, 2150, 2156. Following such guidance, district courts in Sixth Circuit consistently affirm the constitutionality of felon-dispossession laws.[8] Nothing in Petitioner's motion obligates the Court to alter that course.

### IV. CONCLUSION

For the foregoing reasons, Defendant-Petitioner's Motion to Modify or Correct a Legal Sentence (ECF No. 32) is denied.

IT IS SO ORDERED.

| | |
|---|---|
| November 3, 2025 | /s/ Benita Y. Pearson |
| Date | Benita Y. Pearson |
| | United States District Judge |

---

[7] The Court could further justify Petitioner's disarmament due to his mental state. At this writing, he awaits disability benefits awarded because a federal agency has found him unable to work due to his mental health.

[8] *See, e.g.*, *United States v. Coleman*, No. 5:23-cr-00387, 2023 WL 7704966, at *3 (N.D. Ohio Nov. 15, 2023); *United States v. Brown*, No. 1:22-cr-704, 2023 WL 732335, at *2 (N.D. Ohio Nov. 7, 2023); *United States v. Haywood*, No. 22-20417, 2023 WL 36699333, at *1-2 (E.D. Mich. May 25, 2023); *United States v. Taylor*, No. 1:23-cr-289, 2023 WL 5957107, at *3 (N.D. Ohio Sept. 12 2023); *United States v. Bluer*, No. 22-cr-20557, 2023 WL 3309844, at *6 (E.D. Mich. May 8, 2023); *United States v. Davis*, No. 5:19-cr-159, 2023 WL 373172, at *2 (E.D. Ky. Jan. 24, 2023).

5